**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

ROGER McINTOSH and
KAREN McINTOSH                                                    PLAINTIFFS

        v.        Civil No. 05-6071

KEITH SMITH COMPANY, INC.
An Arkansas Corporation                                             DEFENDANT

**O R D E R**

    Now on this 13th day of February, 2006, comes on for consideration defendant's **Motion To Compel** (document #7), and from said motion, and the response thereto, the Court finds and orders as follows:

    1. Plaintiff, Roger McIntosh, alleges that he suffered serious personal injuries in an incident involving a grain auger -- specifically, that he lost a leg in the incident. In this lawsuit resulting from that incident and injury, Mr. McIntosh makes claims arising under Arkansas tort law based upon his contentions that his injuries resulted from either negligence, gross negligence, willful or wanton conduct of the defendant; or from the conducting of an ultra-hazardous activity by defendant. He seeks to recover damages based on his medical expenses, mental anguish, pain and suffering, lost wages, loss of ability to earn, scarring, disfigurement, and disability. Plaintiff, Karen McIntosh, who is the wife of Roger McIntosh, seeks damages for loss of consortium as a result of the incident and the resulting

injuries to Mr. McIntosh.

2. A dispute concerning discovery has now arisen and defendant has filed the Motion to Compel which is under consideration.

As part of its discovery, defendant requested that Roger McIntosh execute a medical authorization which would allow it unrestricted access to all of his medical records.

Mr. McIntosh refused to execute the unrestricted medical authorization, but offered to execute an authorization which would allow defendant access to all his medical records for just the past ten years.

Defendant contends that **A.R.C.P. 35(c)(1)** entitles it to "any" of Roger McIntosh's medical records, because he has put his medical condition in issue.

In response, plaintiffs say that Roger McIntosh should not have to submit to unrestricted "rummaging" or "rifling" through his entire confidential medical history as the price he pays for suing defendant for the loss of his leg.

2. The scope of discovery in United States District Court is governed in general by **F.R.C.P. 26(b)**, which provides that

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in

the action.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Because this case is governed by Arkansas law, the Arkansas rule of privilege applies.  **F.R.E. 501.**  The Arkansas law on physician/patient privilege is found at **A.R.E. 503**, which provides, in relevant part, that

> [t]here is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense. . . .

**A.R.E. 503(d)(3)(A).**

3.  Plaintiffs rely on the injury to Roger McIntosh's leg as an element of their claim, and they do not contend that medical records subsequent to that injury should be restricted.  The issue, thus, is whether, and to what extent, defendant is entitled to learn about Roger McIntosh's past medical history under the applicable rules.

The Court believes the answer to that question is to be found in the concept of relevance as mentioned in **A.R.E. 503(d)(3)(A)** and **F.R.E. 401.**

Relevance is defined in **F.R.E. 401** as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The Court believes this

definition is applicable as well under **A.R.E 502(d)(3)(A)**.

Applying this definition to plaintiffs' claims, the Court believes that some information contained in Roger McIntosh's medical records pre-dating the auger incident could well be relevant to the issues in this case. For example only, and not by way of any suggestion that such is the case, it would clearly be relevant if Mr. McIntosh had a pre-existing medical condition (such as a circulatory impairment) that might have resulted in the loss of use of his leg or the loss of his ability to earn a living even if there had been no accident with the grain auger. In that regard, some of Mr. McIntosh's pre-existing medical records might be "reasonably calculated to lead to the discovery of admissible evidence" and the Court would agree with defendant that such records are discoverable.

4. The Court is likewise in agreement with the plaintiffs that defendant should not be allowed unlimited access to Mr. McIntosh's medical records pre-dating the incident absent some indicia of relevance. In **Harlan v. Lewis**, **982 F.2d 1255 (8th Cir. 1993)** -- a case involving the manner, rather than the scope, of discovery of medical information -- the Eighth Circuit Court of Appeals noted that

> Rule 503(d)(3) removes the privilege only from communications or records *concerning a condition that is an element of a claim or defense; information not relating to such a condition is still privileged*. If the rules did not strictly prescribe the manner in which treating physicians could disclose information, it would

> be left to the treating physician to determine what information was subject to disclosure *and what information remained privileged*. Requiring that contact with treating physicians occur only within the context of formal discovery relieves the treating physician of this responsibility, protects any still privileged information that the physician might possess, and provides for the orderly disclosure of information *relating to the condition that is an element of the claim or defense. We reject the arguments* of Hall and Lewis that ex parte interviews are authorized generally by discovery rules, or *that the filing of the suit operates as an absolute waiver of the privilege.* The carefully crafted Arkansas rules are simply to the contrary.

**982 F.2d at 164** (emphasis added).

Later, in **Kraemer v. Patterson**, **342 Ark. 481, 29 S.W.3d 684 (2000),** the Arkansas Supreme Court found the foregoing analysis by the Eighth Circuit panel in **Harlan** "sound and persuasive." While the Court recognizes, as contended by defendant, that **Harlan** and **Kraemer** involved the manner of discovery, the analysis is such that it likewise encompasses the scope of discovery.

When the Court applies that analysis to the discovery issues here presented, it is persuaded that the filing of this lawsuit does not operate as an absolute waiver of Mr. McIntosh's privilege with regard to all his medical records -- but, rather, only as to those records relating to the injuries sustained in the grain auger incident and those reasonably related to conditions that might have caused loss of use of his leg or loss of his ability to earn in the future.

    5.  It is certainly possible that on-going discovery - such

as the depositions of the plaintiffs or the contents of the medical records obtained pursuant to this Order - may turn up evidence that some other medical condition of Mr. McIntosh might be relevant to either plaintiffs' claims, or the defense of this case. Recognizing such a possibility, the Court does not intend, by this Order, to foreclose any future motions by defendant for additional medical records. It intends only to make clear that a request for such disclosures must be based on some indicia of relevance to the issues herein presented.

**IT IS THEREFORE ORDERED** that defendant's **Motion To Compel** (document #7) is **granted in part and denied in part**:

* the motion is **granted** insofar as it seeks to obtain a medical authorization which will allow defendant to obtain copies of the medical records of Roger McIntosh related to the injuries sustained in the grain auger incident and those reasonably related to conditions that might have caused loss of use of his leg or loss of his ability to earn in the future; and

* the motion is **denied** in all other respects.

**IT IS SO ORDERED.**

    /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE**