IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ROGER McINTOSH and KAREN McINTOSH                    PLAINTIFFS

VS.                          CASE NO. 05-6071

KEITH SMITH COMPANY, INC.
an Arkansas Corporation                              DEFENDANT

**O R D E R**

Now on this 10th day of August, 2006, comes on to be considered the **Motion for Summary Judgment** (Doc. # 14-1) filed herein by defendant, Keith Smith Company, Inc., an Arkansas Corporation, on June 29, 2006, together with **Plaintiff's Response To Defendant's Motion For Summary Judgment** (Doc. # 19-1) filed in response thereto by plaintiffs, Roger McIntosh and Karen McIntosh, on July 23, 2006, and the Court, being well and sufficiently advised as to the matter, finds and orders as follows with respect thereto.

**BACKGROUND**

1.  Plaintiffs Roger McIntosh and Karen McIntosh (husband and wife) bring this action seeking compensatory and punitive damages from defendant, Keith Smith Company, Inc., an Arkansas Corporation, based on the alleged negligent maintenance and operation by defendant of a grain auger.

Defendant denies any liability to plaintiffs and now moves for summary judgment claiming that, as a matter of law, plaintiffs

cannot recover in light of the material facts which defendant claims are not in dispute.

Plaintiffs have responded to defendant's motion for summary judgment and the motion is now ripe for consideration and decision.

2. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The Court considers the facts, and the inferences to be drawn from them, in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Pursuant to Local Rule 56.1, the parties have filed statements of facts which they contend are not in dispute. Not surprisingly, they do not agree as to the material facts. Accordingly, consistent with its obligation to view the matter in the light most favorable to the parties against whom the motion is made, the Court will -- for purposes of making its ruling on the motion under discussion -- utilize plaintiffs' recitation of the material facts as included in their brief.

3. According to plaintiffs, Roger McIntosh (hereinafter called "Roger") suffered a severe injury to his right lower leg on February 23, 2005, at a feed mill owned and operated by defendant near Hot Springs, Arkansas. Plaintiffs say:

\* that Roger was alone when the accident happened, before sunrise, in a dusty and dimly-lit "truck dump" at defendant's feed

mill;

* that Roger had driven to defendant's mill from his home in Iowa, arriving about 8:30 P.M. the night before the accident;

* that Roger contemplated -- based upon previous experience at defendant's mill -- that the next morning he would be told where to go to unload by the mill's "yard man.";

* that, unbeknownst to Roger, defendant's "outside guy" or "yard man" had called in sick and was not on the job the next morning when Roger started to unload;

* that the absent "yard man" was not replaced and, therefore, many of his duties and responsibilities were either performed by other of defendant's employees (in addition to their regular duties) or were not performed at all;

* that among the significant duties and responsibilities of the absent "yard man" which may not have been performed at all on the morning of Roger's accident, were:

> ^ to perform a 're-opening safety "walk through" of both unloading areas before drivers unloaded;
>
> ^ to instruct incoming drivers as to where and when to unload; and
>
> ^ to be available near the unloading areas between loads to make sure everything was in order around the augers and safe for the next driver to unload.

* that, in the absence of the "yard guy", Robert Smith, the

control room operator (or "inside guy"), instructed Roger to unload at the "out back" dump area;

   *  that, although Roger had been to defendant's mill a few times previously, he had only unloaded "out back" on two previous occasions;

   *  that one driver was ahead of Roger and unloaded his load first "out back";

   *  that since the "yard guy" was absent, the unloading area "out back" did not get inspected between loads;

   *  that the "out back" unloading facility consists of a corrugated metal, three-sided unloading area -- down the center of which and recessed into a channel in the concrete floor, runs a metal industrial screw auger;

   *  that the unloading process called for Roger to back his grain trailer into the unloading area -- thus positioning it over the  recessed grain auger -- and then opening the hoppers on his grain trailer so that the grain could fall onto the floor and be carried by the auger back to a grain bin in defendant's facility;

   *  that everything appeared to be in order when Roger backed his trailer into the unloading area -- although vision was limited due to the darkness and the two antiquated hanging lamps which were covered in dust and grime;

   *  that no one had told Roger of any problem before he backed his trailer into the facility and started to unload;

* that, when using his side-view mirrors to back his trailer, Roger noticed nothing amiss with the auger or the safety grate covering it;

* that Roger successfully unloaded his trailer without incident;

* that, as the grain being unloaded fell from the hoppers on Roger's trailer which was placed directly over the auger, the trailer and falling grain covered and obscured the auger and the metal safety grate covering it;

* that after his trailer was empty, Roger pulled his truck and trailer out of the unloading area and outside into the darkness where he then stopped and went back into the facility on foot in order to sweep into the auger any grain that remained on the concrete floor at the edge of the auger and grate;

* that cleaning up around the moving auger after a driver had unloaded grain was a requirement for all drivers unloading at defendant's facility;

* that when Roger returned to the dump area and began sweeping up, there was grain dust still suspended in the air and there was still very dim illumination of the area because of defendant's antiquated lighting system;

* that, nevertheless as best he could see, the area looked to Roger as it had the last time he had delivered grain there and swept up after unloading -- with the metal grate covering the

turning metal blades in the floor;

    *  that, never in his experience since he was a teenager, had Roger been around any operating auger which had metal blades exposed or concerning which drivers, bystanders or employees were exposed to unguarded moving machinery;

    *  that, unbeknownst to Roger, most -- if not all -- of defendant's employees had known for years that the metal grate over the "out back" auger would "float" and move, from time to time, during the unloading process;

    *  that, again unbeknownst to Roger, such floating and moving would occur if the auger failed to clear grain quickly enough because, in such a situation, the grain would back up and push the metal grate up -- or make it "float"; and when it floated, the auger would move the grain but would also move the floating grate, thus taking the grate out of its original position and leaving part of the auger exposed;

    *  that, since an unloading driver is required to back his trailer over the auger, such a floating of the grate and resulting exposure of the auger would be out of the view of the driver;

    *  that, when Roger went back into the unloading area to sweep up -- and unbeknownst to him -- the metal grate had moved out of place leaving some part of the auger exposed and unguarded;

    *  that, since the "yard guy" was absent and no inspections were made, there is no way to know whether the metal grate had been

displaced the day before; or during the unloading of the trailer which unloaded just before Roger unloaded; or during the unloading of Roger's trailer;

\* that the auger was unguarded when Roger started sweeping up;

\* that there were no signs in the area disclosing, informing or warning that the grate over the auger could be displaced under a trailer while it was being unloaded;

\* that there were no signs disclosing, informing or warning that the safety grate over the auger was not securely fixed in place;

\* that there was no person in the area to warn Roger of any danger concerning the unguarded auger; and

\* that, at some point while Roger was sweeping up, his foot, shoes or pants came close enough to the unguarded auger for it to "grab" his leg -- whereupon the turning action of the auger pulled his leg into the auger and caused injuries to it which required that it later be amputated.

### **DISCUSSION**

4. Defendants say it is "undisputed" that the auger system was built or installed at least twenty (15)(sic) years prior to the date of the accident; that the dangers of the auger were open and obvious; that Roger knew, or reasonably should have known of the risk; and that there is no evidence that, on the day of the

accident, defendant was on notice of a missing or moved grate prior to the accident in question. However, as previously noted, the Court is obliged to consider plaintiffs' version of the facts if it is at all supported by available evidence. The Court believes their version is so supported.

5. Specifically, defendant argues that plaintiffs' claims are barred by Statutes of Repose and Limitation; that plaintiffs cannot prove negligence on the part of defendant because of the alleged "open and obvious condition" which led to the injury and because of the alleged "absence of notice" to defendant of the absence of the safety grate; that plaintiffs cannot show that defendant is liable due to its alleged "ultra-hazardous" activity; and that plaintiffs cannot produce evidence sufficient to warrant an award of punitive damages.

Plaintiffs challenge all of defendant's arguments and contentions and insist that defendant's motion for summary judgment must be denied.

6. The Court will address each of defendant's contentions in turn.

(a) **The Statutes of Repose and Limitation** -- Defendant contends that since it built the mill and auger system itself -- more than fifteen (15) years ago -- any claim of plaintiffs for defective design or construction of the mill and auger would be barred by **Ark. Code Ann. §16-56-112(b)(1) (Supp. 2001).**

The Court agrees with plaintiffs that the statute relied upon is inapposite and this contention fails.

(b) **<u>Negligence -- Open and Obvious Condition -- Absence of Notice</u>** -- Defendant argues there is no evidence of negligence on its part which could have proximately caused the accident injuring plaintiff, Roger McIntosh. It further argues that the danger which resulted in Roger's injury was "open and obvious" and thus one for Roger to avoid on his own without the need for any obligation on the part of defendant to protect him from it or to warn him about it.

The Court disagrees. There clearly is evidence from which a jury could conclude that defendant knew the grate could and would be displaced thereby exposing the dangerous auger and that its failure to guard against that happening -- either by corrective action on the grate; by frequently inspecting it and making sure it was immediately replaced when displaced; or by properly warning plaintiff -- would be negligent.

The Court also rejects the "open and obvious" argument made by defendant. On the evidence, the Court believes a jury could find that it was *not* "open and obvious" to Roger that the safety grate could and would move -- or that, in fact, it had moved and was displaced. The jury might also find on the evidence that, rather, it was "open and obvious" to defendant that the metal grate could and would move -- and thereby pose danger to an unsuspecting driver

who had every reason to believe the grate would be securely in place.

It is a bit misleading to argue that, since plaintiff was familiar with grain augers, he knew it was dangerous to work around them. While that is true as far as it goes, it overlooks the undisputed fact that plaintiff was injured because an auger was operated in a manner no one can argue was either proper or safe -- i.e. without a safety grate shielding it so that accidents like the one under discussion could not happen.

The Court also rejects defendant's argument that it did not have notice of the missing grate so as to subject it to liability for negligence. The Court believes there is evidence from which a jury could conclude that defendant, indeed, had such prior notice.

(c) **Ultra-Hazardous Activity** -- Defendant contends that plaintiff cannot prove, under the circumstances, that it was engaging in an "ultra-hazardous activity" which resulted in the injury to plaintiff, Roger McIntosh. While it is true, as argued by defendant, that the usage of augers in agriculture is common, there is no evidence that it is common or acceptable for augers to be used without guards. The Court, thus, is unwilling to hold as a matter of law that plaintiffs cannot establish that there was such an "ultra-hazardous activity" in this case. Accordingly, the Court rejects this argument.

(d) **Punitive Damages** -- Defendant argues that there is not

available sufficient evidence to show plaintiffs' entitlement to punitive damages in this case. The Court rejects this contention at this summary judgment stage and is unwilling to now say, as a matter of law, that plaintiffs cannot so establish their entitlement to punitive damages.

## **CONCLUSION**

7. Based on the foregoing, the Court concludes that **Defendant's' Motion for Summary Judgment** (Doc. #14-1) should be, and it hereby is, **DENIED**.

IT IS SO ORDERED.

>/S/JIMM LARRY HENDREN
>JIMM LARRY HENDREN
>UNITED STATES DISTRICT JUDGE